UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLARA BOWLING, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:05CV1802 CDP |
| | ) |
| KERRY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Two former employees of the same popcorn packaging plant brought this suit in state court claiming respiratory injury resulting from exposure to flavoring used in the popcorn. After the case was removed, plaintiffs sought remand, alleging that diversity of citizenship is lacking. Plaintiff Fidel Amesquita is an Illinois citizen as are three defendants; Plaintiff Clara Bowling is a Missouri citizen as is one defendant. I conclude that there has been no "fraudulent misjoinder" of these plaintiffs' claims, so I lack diversity jurisdiction. Because there is no subject-matter jurisdiction, I need not decide the numerous other issues presented by the parties' multiple motions.

**Background**

Clara Bowling worked at Gilster-Mary Lee, Inc.'s microwave popcorn packaging facility in McBride, Missouri, from 1992 through November of 2000.[1] Fidel Amesquita worked at the same plant from March of 2001 to January of 2003. According to the plaintiffs' petition, both plaintiffs suffered serious respiratory system injuries as a direct result of their work-place exposure to natural and artificial butter flavorings that were manufactured and sold to Gilster-Mary Lee by the eleven named defendants. The plaintiffs' petition contains five-state law claims: strict liability (design defect), strict liability (failure to warn), negligence, breach of continuing duty to warn, and loss of consortium.

The Bowlings are Missouri citizens and Amesquita is an Illinois citizen. Of the eleven defendant corporations three, Sethness-Greenleaf, Inc., Flavor Concepts, Inc., and FONA Worldwide, Inc., are Illinois corporations with their principal places of business in Illinois; one, Givaudan Flavors, Inc., is a Missouri corporation with its principal place of business in Missouri. The entity that actually removed this case was non-party Givaudan Flavors Corporation, which is a Delaware corporation with its principal place of business in Ohio. It claims that it, not its

---

[1]Clara Bowling's husband, William Bowling, is also a plaintiff, bringing his own claims for loss of consortium. His citizenship is identical to Clara's, and so does not affect the analysis here.

Missouri relative, is the proper Givaudan defendant in this action.

The notice of removal asserts that plaintiffs improperly and fraudulently misjoined plaintiff Amesquita to defeat diversity jurisdiction. Defendants also assert that the Missouri Givaudan Inc. should be dismissed and the Ohio Givaudan Corp. should be substituted for it. If Amesquita's citizenship is disregarded, and if the Givaudan substitution is made, then complete diversity would exist for the Bowling claim. Plaintiffs argue that Givaudan Inc. is a Missouri citizen, which prevents removal, that Givaudan Flavors Corporation cannot properly remove a case in which it is not even a defendant, and that in any event their claims are not fraudulently misjoined and the case should be remanded.

## Discussion

A defendant may remove an action from state court to federal district court if the action is within the district court's original jurisdiction, unless an Act of Congress expressly provides otherwise. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and there is complete diversity between all proper plaintiffs and all proper defendants. The party invoking removal jurisdiction has the burden of establishing that federal subject-matter jurisdiction exists, and the Court must resolve all doubts in favor of remand to state court. See

In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993).

Courts considering removal jurisdiction have frequently analyzed claims that a party has been fraudulently joined to defeat diversity jurisdiction. Most often the argument is that a plaintiff has fraudulently joined a nondiverse defendant in an effort to defeat removal. See e.g., Filla v. Norfolk Southern Railway Co., 336 F.3d 806 (8th Cir. 2002); Wiles v. Capitol Indemnity, Corp., 280 F.3d 868 (8th Cir. 2002). In these cases, the test is whether "there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles, 280 F.3d at 871. In other cases, the argument is that a nominal plaintiff has been fraudulently added to preclude diversity jurisdiction. See Iowa Public Service Cp. v. Medicine Bow Coal Co., 556 F.2d 400 (8th Cir. 1977). In those cases "if [a] 'nondiverse' plaintiff is not a real party in interest, and is purely a formal or nominal party, his or its presence in the case may be ignored in determining jurisdiction." Id., 556 F.2d at 404 (citations omitted). However, "if [a plaintiff] can avoid the federal forum by the device of properly joining a nondiverse defendant or a nondiverse co-plaintiff, he is free to do so." Id. See also Morris v. E.I. Du Pont de Nemours & Co., 68 F.2d 788, 792 (8th Cir. 1934) ("Where there is prima facie joint liability, proof that the resident and non-resident tort-feasors are joined for the purpose of defeating removal will not justify removal from state court.").

4

This traditional type of fraudulent joinder argument relates to whether a particular plaintiff has a real claim against a particular defendant, and requires the court to look, at least somewhat, at the substantive merits of the claim. If the state law is unclear, the federal court "has no responsibility to *definitively* settle the ambiguous question of state law," but instead should determine whether there is a "reasonable basis for predicting that the state's law might impose liability against the defendant." Filla, 336 F.3d at 811.

Defendants here do not assert one of these garden-variety arguments of fraudulent joinder of a *party*, but instead argue that the *claims* of Fidel Amesquita and the Bowlings were improperly joined to defeat diversity jurisdiction. This theory has been referred to as "fraudulent misjoinder" or "procedural misjoinder," and requires the court to look to whether different claims have been improperly joined together. Unlike traditional fraudulent joinder arguments, this is a question of state court *procedure*, and does not require the court to look at the substantive merits of the claims under state law.

The theory of fraudulent misjoinder is said to have begun with Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). In Tapscott, two separate groups of plaintiffs attempted to merge two distinct lawsuits in order to

5

avoid federal jurisdiction. One group of plaintiffs representing a putative class sued one group of defendants for statutory fraud arising from the sale of automobile service contracts. Another group of plaintiffs representing a separate merchant class sued another group of defendants for statutory fraud arising from the sale of extended retail service contracts. The plaintiffs conceded that the two groups of claims were not properly joined under Fed. R. Civ. P. 20(a), and instead argued that a misjoinder, no matter how egregious, could not constitute fraudulent joinder. The Eleventh Circuit disagreed, holding that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." Id. at 1360. The Fifth Circuit, in dicta, appeared to approve of Tapscott's fraudulent misjoinder theory as it applied to misjoined plaintiffs in In re: Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002)("Thus, without distracting from the force of the Tapscott principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case.").

District court cases reach widely varying results when faced with this argument. Compare In re: Diet Drugs, 294 F. Supp.2d 667 (E.D. Pa. 2003)(applying Tapscott and finding egregious misjoinder where plaintiffs attempted to join nondiverse New Jersey plaintiffs who had no connection to the

other plaintiffs except that each ingested diet drugs), with Osborne v. Metropolitan Life Ins. Co., 341 F. Supp.2d 1123, 1127-28 (E.D. Cal. 2004)(declining to apply Tapscott's theory of misjoinder, and thus granting plaintiffs' motion to remand). Several courts and commentators have noted that the theory of procedural misjoinder articulated in the Tapscott decision is inherently ambiguous. In Tapscott, the court held that "mere misjoinder" does not necessarily constitute fraudulent misjoinder. 77 F.3d 1360. Rather, the misjoinder must be "so egregious as to constitute fraudulent joinder." Id. As one court noted, this holding requires "something more" than mere misjoinder, but "[p]recisely what the 'something more' is was not clearly established in Tapscott and has not been established since." In re Bridgestone/Firestone, Inc., 260 F.Supp.2d 722, 728 (S.D. Ind. 2003). See also 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3723, at 656 (noting that "numerous additional decisions will be needed to clarify" this egregiousness standard). The parties' briefs in this case fail to even address this standard.

Federal courts, of course, could easily avoid this confusing standard if a removing party challenged misjoinder in state court before seeking removal. See 14B Federal Practice and Procedure § 3723 at 658. Requiring misjoinder to be addressed in state court does not impair the ability of a defendant to remove an

7

action following the dismissal or severance of the improperly joined party. Id. See also Osborn, 341 F.Supp.2d at 1128.

The Eighth Circuit has not considered the theory of procedural misjoinder, which is not surprising given that 28 U.S.C. § 1447(d) prevents appellate review of remand decisions based on lack of subject-matter jurisdiction. For purposes of this decision, I will assume that there are some situations where misjoinder would be so egregious that it should not defeat removal jurisdiction. I need not determine how to define that egregiousness, however, because I conclude that the claims here were not misjoined at all.

Missouri Rule of Civil Procedure 52.05 is identical to Rule 20(a), Fed. R. Civ. P., and allows plaintiffs to join their claims in one action if the claims: (1) arise out of the same transaction and occurrence and (2) present a common question of law or fact. The parties agree that the joinder analysis is the same under federal and state law. In State ex rel. Allen v. Barker, 581 S.W.2d 818, 826 (Mo. 1979) the Missouri Supreme Court discussed the adoption of its rule, recognized that it was patterned after the federal rule, and applied federal cases to interpret it, noting also that there is a "broad policy favoring permissive joinder." Id. at 827. "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued."

8

Mosley v. General Motors Corp., 497 F.2d 1330,1333 (8th Cir. 1974) (citation omitted). The Eighth Circuit has provided a very broad definition for the term "transaction":

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Id. at 1333 (citations omitted).

Applying this generous standard, the Court in Mosley held that ten plaintiffs could join their individual claims of race discrimination in a suit against their employer, even thought they alleged different effects, because all claims stemmed from the defendant's same company-wide policy. 497 F.2d at 1333-34. See also Madison v. Hennepin County, 2003 WL 21639176, at *3 (D. Minn. July 1, 2003) (permitting the joinder of plaintiffs who all alleged that they were injured by the defendant's company-wide policy of discriminating against blacks). Similarly, in Geir By and Through Geir v. Educational Service Unit No. 16, 144 F.R.D. 680, 688-89 (D. Neb. 1992), the court held that the abuse claims of seven handicapped students arose out of the same series of transactions or occurrences such that they

9

could be joined in a single action. Although the plaintiffs in Geir did not all attend the defendant school simultaneously or allege acts of abuse by the same school employees on the same dates, the court held that each plaintiff claimed an injury as a result of the school's general policy of condoning physical, sexual, and emotional abuse of students. Id.

In this case, although each of the plaintiffs may not have worked at the McBride facility at the same time, they each assert a right to relief arising out of the same series of transactions or occurrences. Specifically, both plaintiffs allege that they were injured by the defendants' common practice of manufacturing and selling butter flavoring containing diacetyl, a chemical that all the defendants knew, or should have known, was unreasonably dangerous. Additionally, plaintiffs each allege that the defendants failed to adequately warn of the potential health risks posed by exposure to their butter flavoring.

Defendants argue that highly individualized issues of causation, exposure, and damages, among others, predominate over the common issues presented in the plaintiffs' claims. Based on the record before me, I disagree. According to the petition, the plaintiffs suffered the same respiratory injuries, as a result of exposure to the same artificial or natural butter flavoring, while working at the same microwave popcorn facility. Cf. Smith v. Planned Parenthood of the St. Louis

Region, 225 F.R.D. 233, 245 (E.D. Mo. 2004) (severing plaintiffs' fraud claims against common defendant where one was "based on an alleged omission of material information concerning risks associated with abortion in 1999, while [the other was] based on defendants' alleged false representations with respect to its offer of free counseling in 2002."). Although Amesquita's and Clara Bowling's terms of employment did not overlap, they were separated by a mere four months. Nothing in the record shows that the flavoring concentrations, warnings, or workplace safety practices changed significantly in this four month period of time. Amesquita alleges that he suffered the same injuries, as a result of the same misconduct by the defendants, as Clara Bowling alleges. Each of the plaintiffs' claims present common issues such as the dangerousness of the defendants' butter flavoring, the defendants' knowledge of the dangers posed by their product, and the defendants' policy or practice with regards to warning, or failing to warn, their customers about these dangers.

    I am mindful of the Jasper County Circuit Court's decision in Benavides v. Int'l Flavors & Fragrances, Inc., et al., No. 01-CV-683025 (Mo. Cir. Ct. 1st Div. Jan. 15, 2004). In that case, the court severed the claims of forty-five plaintiffs who alleged injuries from exposure to the defendants' butter flavoring. The court exercised its discretion to grant severance; it did not rule that the cases were

misjoined under Missouri rule 52.05.  Moreover, the court in Benavides was presented with evidence that the plaintiffs' injuries varied in nature, duration, and severity, and were attributed to "scientifically novel" causes.  Id. at 3.  There is no such evidence before me.  Additionally, this case concerns only two plaintiffs, not forty-five.

For the foregoing reasons, I find that defendants have failed to establish improper joinder of Amesquita's claims with the Bowlings' claims.  The claims share numerous common questions of fact and law, at least as related to liability.  Since joinder under Missouri law was appropriate, there was no "fraudulent procedural misjoinder," and diversity of citizenship does not exist.  I need not reach the issue of what "egregious misjoinder" would look like, since there is no misjoinder at all here.  Similarly, I need not reach the issue regarding whether a non-defendant can properly remove a case under the allegation that it, rather than its non-diverse associated company, is the proper party.[2]

## Attorneys' Fees

Plaintiffs have filed a motion for attorneys fees, arguing both that attorneys

---

[2]Plaintiffs argue that the recently decided Supreme Court case of Lincoln Property Co. v. Roche, 126 S. Ct. 606 (2005), supports their argument that Givaudan Flavors, Inc., the Missouri corporation, was properly joined.  Lincoln Property simply held that a properly named diverse defendant is not required to negate the existence of a potential codefendant whose presence in the action would destroy diversity; the issue in this case is entirely different.

12

fees should be awarded as a matter of course when a case has been improvidently removed, and that various defendants here engaged in bad faith. 28 U.S.C. § 1447(c) allows a court to award attorneys fees: "An order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." Just last week the Supreme Court held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 2005 WL 3299410, at *3 (U.S. Dec. 7, 2005). This decision squarely rejects plaintiffs' assertion that fees should be awarded as a matter of course.

I conclude that an award of attorneys fees would not be just. Defendants had an objectively reasonable basis for the removal. As discussed above, district courts across the country have reached very different results when confronted with the procedural misjoinder argument. Additionally, plaintiffs' arguments regarding the unauthorized practice of law or other acts of bad faith are simply wrong, and there has been no bad faith in this case.

## Conclusion

Because defendants have failed to demonstrate that Amesquita's claims were improperly joined with Clara Bowling's claims, they have provided me with no

basis to disregard Amesquita's citizenship. Complete diversity does not exist, and so there is no federal subject-matter jurisdiction in this case. Because there was an objectively reasonable basis for the removal, however, an award of attorneys fees would not be just.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand [# 32] is granted and the Clerk of Court is directed to REMAND this case to the Circuit Court of St. Louis County, Missouri.

**IT IS HEREBY ORDERED** that plaintiffs' motion for attorneys fees [#84] is denied.

**IT IS FURTHER ORDERED** that the parties' various pending motions [#'s 26, 28, 30, 47, 48, 49, 64, 66, 68, 74, 76, 78, and 86] are denied as moot.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of December, 2005.